**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BENJAMIN POST** | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 06-CV-4587 |
| | : | |
| **ST. PAUL TRAVELERS** | : | |
| **INSURANCE CO., et al.,** | : | |
| | : | |
| Defendants. | : | |
| | : | |

<u>**EXPLANATION AND ORDER**</u>

**I.  INTRODUCTION**

On February 7, 2008, Plaintiff Benjamin Post ("Post") filed an amended complaint

against St. Paul Travelers Insurance Company ("St. Paul) alleging Breach of Contract (the

insurance policy), Breach of Contract (agreement to pay the costs of the sanctions proceeding),

Bad Faith Refusal to Provide Insurance Coverage, Promissory Estoppel, and asking for a

Declaratory Judgment.  On June 30, 2008, St. Paul filed a Motion for Partial Summary Judgment

on all counts except Promissory Estoppel.  On July 31, 2008, Post responded to St. Paul's

Motion and also filed a Motion for Partial Summary Judgment on Count I (Breach of Contract as

to the insurance policy), Count II (Breach of Contract as to the agreement to pay the costs of the

sanctions proceeding), and Count V (Declaratory Judgment).  For the reasons that follow, Post's

Motion for Summary Judgment is granted with respect to Counts I and V and denied with respect

to Count II.  St. Paul's Motion for Partial Summary Judgment is denied.

1

## II. BACKGROUND[1]

In 2003, Post and Tara A. Reid ("Reid") were defense counsel representing Mercy Hospital ("Mercy") in a medical malpractice suit in the Common Pleas Court of Luzerne county, captioned Bobbett, et al. v. Mercy Hospital, et al. (the "Bobbett case"). During trial, Mercy and the Bobbett plaintiffs reached a settlement agreement; Mercy claimed this was due, at least in part, to allegations of discovery abuse by defense counsel (Post and Reid). On or about October 2005, Catholic Health Partners Vice-President for Risk and Insurance, Michael Williams ("Williams") sent letters to Post advising him not to destroy any documentation from the Bobbett case and to place Post on notice that Mercy intended to sue Post for malpractice. On October 20, 2005, Williams asked Post to notify his professional liability carrier and have someone from that company contact Williams. In early November 2005, Post's counsel George Bochetto ("Bochetto") contacted St. Paul to put them on notice of a claim or potential claim against Post and included the October 20 letter from Williams. St. Paul opened a claims file for Post and Michael Spinelli ("Spinelli") assumed responsibility for this claim.

On November 21, 2005, the Bobbett plaintiffs filed a Petition for Sanctions ("sanctions petition") against Post and Reid. Soon after, Mercy filed an answer to the sanctions petition but did not bring an independent suit against Post and Reid at that time. In the sanctions petition, the Bobbetts sought sanctions against Post and Reid and "any other relief this court deems just and equitable under the unique and serious circumstances presented before it." (St. Paul's Motion for Summary Judgment, Exhibit C Part 2, p. 59). Mercy sought the same relief in their Answer. On

---

[1] Both parties filed motions for summary judgment, however, because I am granting Post's motion in part, these facts were considered in the light most favorable to St. Paul.

November 28, 2005 Bochetto advised St. Paul of the sanctions petition.  Post and Reid sought a defense to the sanctions petition and to Mercy's Answer from St. Paul under a Professional Liability Policy ("Liability Policy").  Post contends that Mercy made a malpractice claim that was covered by the Liability Policy and that Mercy joined the sanctions petition in anticipation of their malpractice suit.  St. Paul's position was and is that the sanctions petition only sought relief in the form of sanctions, which are excluded under the Liability Policy.

In December 2005, St. Paul retained counsel, Mark Anesh ("Anesh"), to advise them on their coverage obligations toward Post.  Anesh was not advised of Mercy's potential malpractice claim, but was provided with information regarding the sanctions petition.  Under Anesh's guidance, St. Paul continued to decline coverage but in March and April 2006, Anesh met twice with Post's attorneys to discuss an offer by St. Paul to pay certain attorneys' fees.  On May 3, 2006, Anesh sent a letter to Bochetto saying that St. Paul would pay "bills as regards or relates to time expended to defend potential malpractice claims."[2] (Post Motion for Summary Judgment, p. 21).  At that time, Bochetto's fees for representation of Post exceeded $400,000.  Anesh, on behalf of St. Paul, offered to pay $36,220.26.  Post responded that this offer was unacceptable and made in bad faith.

On November 19, 2007, Mercy filed a *praecipe* for writ of summons against Post in the Court of Common Pleas of Luzerne County.  To date, Post alleges that over $600,000 was spent in attorneys' fees to defend against the sanction petition and Mercy's malpractice claim.

---

[2] I did not consider this agreement with regard to any of the counts, except for Count II, which alleges a breach of this particular agreement.

3

The Liability Policy included a "duty to defend any protected person against a claim or suit for loss covered by this agreement." (Exhibit E of St. Paul's Motion for Summary Judgment, p. 27). A "claim" was defined as a "demand that seeks damages," while a "suit" was defined as "a civil proceeding that seeks damages." The Liability policy further stated that a claim was considered to have been first made or brought against a protected person on the date that St. Paul or any protected person "first receives written notice of such claim" or when St. Paul received written notice from a protected person "of a specific wrongful act that caused the loss which resulted in such claim or suit." Id. at 30. Damages included "compensatory damages imposed by law" and "punitive or exemplary damages imposed by law if such damages are insurable under the law that applies," but specifically did not include "civil or criminal fines, forfeitures, penalties, or sanctions." Id. at p. 25-26. The Liability Policy further stated that when St. Paul defends a protected person against a claim or suit, they will pay defense expenses. Defense expenses included "fees, costs, and expenses that result directly from the investigation, defense, or appeal of a specific claim or suit." Id. at 28. Also included in defense expenses were attorneys fees, costs of proceedings involved in the suit, and fees for witnesses, investigators and experts.

### III.  JURISDICTION

This court has jurisdiction to hear this case under 28 U.S.C. § 1332 because there is complete diversity between the parties and the amount in controversy exceeds $75,000. The court has the authority to grant declaratory relief pursuant to 28 U.S.C. § 2201. Both parties agree that Pennsylvania law applies to this case.

**IV.  SUMMARY JUDGMENT STANDARD**

Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Facts are material if they might affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A genuine issue exists when the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party.  Id. at 248-52.

Summary judgment is appropriate as a matter of law when the non-moving party has failed to make an adequate showing on an essential element of his case, as to which he has the burden of proof at trial.  Cleveland v. Policy Management Sys. Corp., 526 U.S. 795, 804 (1999).  To overcome a summary judgment motion, a plaintiff may not rely on allegations or denials; a plaintiff must set out specific facts showing a genuine issue for trial.  Fed. R. Civ. P. 56(e).

**V.  DISCUSSION**

A.  Count I: Breach of Contract

The interpretation of an insurance contract, including an analysis of coverage, is a question of law generally determined by the court.  Donegal Mutual Ins. Co. v. Baumhammers, 938 A.2d 286, 291 (Pa. 2007) (citations omitted).  When the terms of the policy are unambiguous, they control, but when the terms are ambiguous they must be interpreted in favor of the insured.  Id. (citations omitted).   The duty to defend under an insurance policy is broader than the duty to indemnify, in that the duty to defend is triggered whenever the allegations in a complaint may potentially come within the insurance coverage.  Lucker Mfg., Inc. v. Home Ins.

Co., 23 F.3d 808, 813 (3d Cir. 1994).  The insurer's duty to defend remains until the insurer is

able to show that the factual allegations in the complaint, even if true, do not fall within the scope

of the policy.  Id. (citations omitted).  "If the complaint against the insured avers facts that would

support a recovery covered by the policy, then coverage is triggered and the insurer has a duty to

defend until such time that the claim is confined to a recovery that the policy does not cover."

Gen. Accident Ins. Co. of Am. v. Allen, 692 A.2d 1089, 1095 (Pa. 1997).  In determining

whether a duty to defend exists, a court must look to the factual allegations in the complaint

regardless of the particular causes of action.  Mutual Ben. Ins. Co. v. Haver, 725 A.2d 743, 745

(Pa. 1999).

Post contends that St. Paul had a duty to defend against Mercy's malpractice claim and

the sanctions petition because either could result in an award of damages covered by the Liability

Policy.  Post further alleges that by refusing coverage, St. Paul breached its duties and obligations

under the Liability Policy.  St. Paul responds that it had no duty to defend Post because the

damages sought in the sanctions petition and in Mercy's answer to the sanctions petition were

excluded under the Liability Policy.  There is no dispute that the Liability Policy was a valid

contract between St. Paul and Post and that St. Paul denied Post coverage under the policy.  The

issue for this court is whether or not St. Paul had a duty to defend Post in the sanctions petition.

If so, then St. Paul is liable for breach of contract.

### i. Mercy's letters constituted a "claim" under the Liability Policy

Before the Bobbetts filed the sanctions petition and before Mercy joined that petition,

Mercy informed Post in writing that they intended to sue Post for legal malpractice and that they

were preparing for litigation.  Mercy also asked for a representative of Post's professional

liability insurer to contact them.  The Liability Policy included coverage for defending a "claim," or "demand for damages," which was defined separately from a "suit."   Additionally, under the Liability Policy, claims were considered brought on the day that a protected person received written notice of such claim or provided St. Paul with written notice of a wrongful act that caused a loss that resulted in such claim.[3]  Because the phrase "demand for damages" is unclear, Post's definition prevails.  Mercy's written notification of their plan to sue Post for malpractice qualified as a "demand for damages" as the nature of the claim clearly inferred Mercy's intent to seek damages against Post, even if damages were not specifically requested.

**ii.  The duty to defend was triggered by Mercy's claim**

The Liability Policy further stated that St. Paul had a duty to defend any protected person against a claim or suit for covered loss.  By differentiating a claim from a suit, the Liability Policy contemplated that the duty to defend would be triggered by activity that raises a potential for coverage prior to the actual  filing of a complaint.  See Am. and Foreign Ins. Co. v. Jerry's Sports Center, Inc. 948 A.2d 834, (Pa. Super. Ct. 2008) (holding that the duty to defend is triggered whenever a claim is not only actually covered, but also potentially covered); Heffernan & Co. v. Hartford Ins. Co., 614 A.2d 295, 298 (Pa. Super Ct. 1992) (holding that after interrogatories unearthed a potentially covered claim, the insurer's duty to defend was triggered even though the third-party had not yet amended its complaint to include the covered claim: "Both [the insured] and [the insurer] are now on notice that a claim for damage . . . will probably be made in the underlying action.  In the meantime, . . the insurer has an obligation to . . defend

---

[3]  If the letters from Mercy had been received prior to Post entering into this contract, surely St. Paul would have argued that a claim had already been made against Post.

the action.").  Written notice of the filing of a potentially covered malpractice suit would trigger a duty to defend before the suit was actually filed.

 Mercy made it abundantly clear that they were preparing to sue Post for legal malpractice, a suit could result in loss that was covered under the Liability Policy; therefore, Mercy established a "claim" as defined by the Liability Policy.  St. Paul contends that Mercy's letters did not trigger a duty to defend because they indicated only a "potential" claim, at which point there was nothing to defend.  After receiving Mercy's letter, however, St. Paul opened a claims file for Post - they too viewed the duty to defend as triggered before the complaint was filed.  St. Paul may not have needed to act immediately but they had a duty to defend Post as Mercy's malpractice claim progressed, for as long as the claim was potentially covered.  Mercy's letters triggered St. Paul's duty to defend Post until such time as Mercy's claim was limited to recovery that was not covered by the Liability Policy.

### iii.  The duty to defend included the sanctions petition once Mercy joined the petition

St. Paul contends that Mercy's potential claim was separate from the sanctions petition and thus St. Paul had no duty to defend the petition, even though St. Paul realized that the allegations in the sanctions petition and Mercy's malpractice claim "both stemmed from the same underlying claim" (Exhibit 28 of Post's Motion, Spinelli Deposition p. 130).   Furthermore, St. Paul recognized that the decisions made in the sanctions proceeding could have a collateral estoppel effect on Mercy's malpractice claim (Post's Summary Judgment Motion Exhibit 39, Anesh Deposition p. 66-67).

Under the terms of the Liability Policy, St. Paul's duty to defend encompassed defense expenses, including those stemming from "proceedings involved in the suit." According to those terms, St. Paul would have a duty to defend the sanctions petition proceedings after Mercy joined the sanctions petition. When Mercy joined the sanctions petition, the proceedings surrounding the petition became "involved" in Mercy's previously asserted malpractice claim through the potential for collateral estoppel effect. Mercy likely joined the sanctions petition, in part, to participate in developing the facts and/or law that would directly impact their malpractice suit (assuming the sanctions petition did not result in sufficient monetary compensation to eliminate Mercy's need to sue for malpractice). Potentially, the sanctions proceeding could have estopped Post from denying wrongdoing in Mercy's legal malpractice claim.[4] It has already been established that St. Paul had a duty to defend Post in Mercy's malpractice suit. Once Mercy joined a petition that could have collateral estoppel effect on the malpractice suit, St. Paul had a duty to defend Post in those proceedings under the Liability Policy, as they became "involved" in the covered claim. Even if the sanctions proceedings did not have collateral estoppel effect on Mercy's malpractice suit, information gathered during those proceedings could clearly effect Post's defense.

St. Paul was on notice of Mercy's malpractice claim against Post, that this claim involved the same factual allegations of misconduct as the sanctions petition, that Mercy joined the sanctions petition, and that the proceedings surrounding the sanctions petition could have a

---

[4]See Dan L. Goldwasser and Linda J. Pittleman, Selection and Conduct of Insured's Defense Counsel, Introduction to Business Insurance: Law and Litigation, Practising [sic] Law Institute, Litigation and Administrative Practice Course Handbook Series, 567, 580 (1985) ("The insurer's duty to defend a collateral proceeding can be troublesome, especially where the results of the collateral proceeding can be the basis of invoking res judicata or collateral estoppel.").

collateral estoppel effect on Mercy's future malpractice suit.   These factors establish that the sanctions petition proceedings became "involved" in Mercy's malpractice claim as soon as Mercy joined the petition.  Defending against the sanctions proceeding was necessary for a defense of the future malpractice claim; therefore, the duty to defend Mercy's malpractice claim included a duty to defend the sanctions petition.  Because Mercy's malpractice claim could have resulted in loss covered by the Liability Policy and the sanctions petition was involved in that claim, St. Paul had a duty to defend the sanctions petition even if that petition alone could not have resulted in covered loss.

Taking into account all of the above considerations, I find that 1) Mercy's written notice that they were going to sue Post triggered a duty to defend; 2) this duty to defend encompassed the sanctions petition because the sanctions petition became involved in Mercy's malpractice claim after Mercy joined the petition and the potential for collateral estoppel arose.

### iv.  The Liability Policy does not exclude the sanctions petition from coverage

St. Paul contends that the sanctions petition is excluded from coverage because the sanctions petition and Mercy's answer to the sanctions petition requested relief only in the form of sanctions, which are excluded from the Liability Policy.  First, as explained above, Mercy's malpractice claim triggered a duty to defend that included the sanctions petition after Mercy joined because that petition was involved in the covered claim.  As long as Mercy's malpractice claim could have resulted in covered loss, St. Paul had a duty to defend all proceedings involved in that claim.  An insurance carrier has a duty to defend if any of the allegations in the complaint could support recovery under the policy, until such time as the claim is limited to relief that the policy does not cover.  Gen. Accident Ins. Co., 692 A.2d at 1095.  To determine if there is

10

coverage, courts must look to the facts alleged in the underlying complaint, not the cause of action pled.  QBE Ins. Co. v. M&S Landis Corp. T/d/b/a Fat Daddy's, 915 A.2d 1222, 1225 (Pa. Super. Ct. 2007) (citations omitted).  If the terms in a policy are ambiguous, they must be interpreted in favor of the insured.  Donegal, 938 A.2d at 291.

Second, even if the sanctions petition were not part of Mercy's claim, the petition was not excluded by the Liability Policy after Mercy joined the petition.  The sanctions exclusion in the Liability Policy does not exclude sanctions petitions brought or joined by an attorney's former client.  The Liability Policy stated:

> . . . we won't consider damages to include any:
> •        civil or criminal fines, forfeitures, penalties, or sanctions; or
> •        legal fees charged or incurred by any protected person

Exhibit E of St. Paul's Motion for Summary Judgment, p. 25

The term "sanctions" was undefined in the Liability Policy.   If an attorney errs, his or her client typically seeks malpractice damages, not relief in the form of the excluded damages in the above list.  Sanctions, in particular, are understood by the legal community to be sought by opposing counsel.  Under Pennsylvania law, sanctions based upon a party's violation of discovery rules may only be imposed by the court on motion of a party and cannot be imposed sua sponte.  Pennsylvania Rule of Civil Procedure 4019(a)(1).  As Gregory Joseph says, "Rule 11 jurisprudence is often looked to when sanctions are considered under rules or other powers." Gregory P. Joseph, Sanctions: The Federal Law of Litigation Abuse § 1, 2 (4th ed. 2008). The Advisory Committee Notes to the 1983 Amendment to Federal Rule of Civil Procedure 11 state that:

> The amended rule attempts to deal with the problem by building upon and expanding the equitable doctrine permitting the court to award expenses, including attorney's fees, to a litigant <u>whose opponent</u> acts in bad faith in instituting or conducting litigation (emphasis added).

Further, the Superior Court of Pennsylvania developed a multi-factor test for trial courts to apply before imposing sanctions. The first step of this test is to "examine the party's failure in light of the <u>prejudice caused to the opposing party</u> and whether the prejudice can be cured" (emphasis added). <u>Miller v. Sacred Heart Hospital</u>, 753 A.2d 829, 832 (Pa. Super. Ct. 2000). Under Pennsylvania law, a trial court weighs the prejudice to the opposing party when analyzing whether to impose sanctions. Courts and litigants anticipate that a motion for sanctions, if brought, will be brought by the opposing party. Sanctions, particularly those for violations of discovery rules, are understood to be sought by the opposing party on motion, while a client's remedy for his or her attorney's errors is a malpractice suit.

In this case, Mercy requested relief from Post in the form of "sanctions or any other relief the Court deems just and equitable under the unique and serious circumstances presented before it." The sanctions exclusion in the Liability Policy, however, under the commonly understood definition of sanctions as discussed above, refers to sanctions motions brought by opposing counsel. This exclusion does not preclude from coverage a sanctions petition joined by a lawyer's former client, particularly one brought in anticipation of a malpractice suit based on identical allegations of wrongdoing. The attorney-client relationship between Post and Mercy indicates that the damages Mercy requested in the sanctions petition were actually malpractice damages, though Mercy termed them "sanctions." As Post's former client, the facts alleged by Mercy in the sanctions petition sound in malpractice, even though brought under a cause of

12

action for sanctions.  It is the facts in the complaint that dictate whether the exclusion in the liability policy applies, not the cause of action selected by Mercy.  If the sanctions petition were excluded from coverage, Mercy could choose whether to proceed with an action where Post was covered by his insurance carrier, or an action where Post was not, and potentially be awarded similar relief in either action.

A professional liability insurance carrier should not be able to avoid coverage for what is essentially a malpractice claim simply because of how an attorney's former client chooses to term the requested relief.  Because the sanctions exclusion in the liability policy was unclear, it must be construed in favor of the insured.  Therefore, the sanctions petition was not excluded from coverage under the liability policy after Mercy joined the sanctions petition and St. Paul had a duty to defend Post at that time.  St. Paul breached their duty to defend Post under the Liability Policy and are therefore liable for breach of contract.

B.  Count II: Breach of Agreement to Pay the Costs of the Sanctions Proceeding

Post alleges that St. Paul breached Anesh's agreement with Bochetto that St. Paul would pay "bills as regards or relates to time expended to defend potential malpractice claims."  There are genuine issues of material fact regarding this agreement; therefore, I deny Post's motion for summary judgment as to Count II.

C.  Count III: Bad Faith Refusal to Provide Insurance Coverage

St. Paul moved for summary judgment with regard to Count III.  I found that St. Paul breached its contractual duty to defend Post and I deny St. Paul's Motion For Summary Judgment as to whether or not this breach was made in bad faith.  This issue also raises a genuine issue of material fact and shall be determined later in the litigation, if appropriate.

D.  Count IV: Promissory Estoppel

      Neither party has moved for summary judgment with regard to Count IV.

D.  Count V:  Declaratory Judgment

      Post seeks a Declaratory Judgment stating that St. Paul was required to defend Post in the sanctions proceedings and that St. Paul is required to reimburse Post for all attorneys' fees and costs expended by him in defense of the sanctions proceeding.  I find that St. Paul had a duty to defend Post in the sanctions proceedings after Mercy joined the sanctions petition and that Post is entitled to reimbursement.  The amount of reimbursement due to Post as a result of this breach is an issue to be determined later in the litigation.

<u>ORDER</u>

**AND NOW**, this ⎯7th⎯ day of January 2009, it is **ORDERED** that Benjamin Post's Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part and St. Paul Travelers Insurance Company's Motion for Summary Judgment is **DENIED**:

•      Benjamin Post's Partial Motion for Summary Judgment (Doc. #80) is **GRANTED** as to Count I (Breach of Insurance Contract).

•      Benjamin Post's Partial Motion for Summary Judgment (Doc. #80) is **GRANTED** as to Count V (Declaratory Judgment[5]).

•      Benjamin Post's Partial Motion for Summary Judgment (Doc. #80) is **DENIED** without prejudice to raise at a later stage in the litigation as to Count II (Breach of Agreement to Pay Costs of Sanctions Proceedings).

•      St. Paul Travelers Insurance Company's Motion for Summary Judgment (Doc. #79) is **DENIED** as to Count I (Breach of Insurance Contract).

•      St. Paul Travelers Insurance Company's Motion for Summary Judgment (Doc. #79) is **DENIED** as to Count V (Declaratory Judgment).

•      St. Paul Travelers Insurance Company's Motion for Summary Judgment (Doc. #79) is **DENIED** without prejudice to raise at a later stage in the litigation as to Count II (Breach of Agreement to Pay Costs of Sanctions Proceedings).

•      St. Paul Travelers Insurance Company's Motion for Summary Judgment (Doc. #79) is **DENIED** without prejudice to raise at a later stage in the litigation as to Count III

---

[5] The amount of reimbursement due to Post is to be determined at a later stage of litigation.

(Bad Faith Refusal to Provide Insurance Coverage).

s/Anita B. Brody

ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:     Copies **MAILED** on _____ to: